IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| MARJORIE COX, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-05-2556 |
| THE RITZ-CARLTON HOTEL COMPANY OF MEXICO, S.A. DE C.V. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This personal injury action arises out of injuries Plaintiff Marjorie Cox ("Plaintiff") sustained when she fell at Defendant The Ritz-Carlton Hotel Company of Mexico, S.A. DE C.V.'s ("Defendant" or "RCHC of Mexico") hotel in Cancun, Mexico. Pending before this Court is Defendant's Motion to Dismiss (Paper No. 51) for lack of personal jurisdiction and failure to meet the statute of limitations. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because Plaintiff is a resident of New York and Defendant is a foreign corporation. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendant's Motion to Dismiss is DENIED.

BACKGROUND

The facts are viewed in a light most favorable to the Plaintiff. On August 12, 2000, Plaintiff slipped and fell on a wet marble floor in the lower lobby of Defendant's hotel in Cancun, Mexico. She sustained several injuries to her left leg and foot as a result of the fall.

Plaintiff filed a personal injury complaint on July 24, 2001, in the U.S. District Court for the Eastern District of New York (Case No. 01-CV-4911-JG) against the Ritz-Carlton Hotel

Company, LLC ("RCHC"), a North American company with its principal place of business in Bethesda, Maryland. She also filed an amended complaint on August 10, 2001 (Paper No. 2 in 01-CV-4911-JG). On September 30, 2002, Plaintiff filed a second amended complaint adding Grupo Inmobiliario Mosa, S.A. De C.V., RCHC of Mexico, and R.C. Management Company of Mexico, S.A. De C.V. as Defendants (Paper No. 14 in 01-CV-4911-JG). Plaintiff concedes that the Mexican companies were not successfully served with process at that time. (Pl.'s Mem. Opp'n Mot. Dismiss 5-6.) Defendant RCHC filed a Motion for Summary Judgment on September 13, 2004 (Paper No. 22 in 01-CV-4911-JG), which Judge Gleeson of the U.S. District Court for the Eastern District of New York granted on September 24, 2004 (Paper No. 27 in 01-CV-4911-JG). Plaintiff filed a third amended complaint naming Defendant as the sole defendant in the case.[1] Grupo Inmobiliario Mosa, S.A. De C.V. and R.C. Management Company of Mexico, S.A. De C.V. were terminated as defendants on December 14, 2004.

On May 26, 2005, Defendant moved to dismiss the claim for lack of personal jurisdiction. (Paper No. 39 in 01-CV-4911-JG.) Plaintiff cross-filed a Motion to Change Venue to this Court. (Paper No. 40 in 01-CV-4911-JG.) On August 30, 2005, Judge Gleeson denied Defendant's motion without prejudice and granted Plaintiff's motion, thereby transferring the case to this Court (Paper No. 42 in 01-CV-4911-JG.) The suit was assigned case number RDB-05-2556. On January 25, 2006, Defendant filed a Motion to Dismiss for lack of personal jurisdiction and Plaintiff's failure to comply with the applicable statute of limitations. (Paper

---

[1] There are actually three entries for Plaintiff's Third Amended Complaint in the docket for 01-CV-4911-JG: Paper No. 29 filed December 13, 2004; Paper No. 31 filed December 23, 2004; and Paper No. 33 filed January 11, 2005. It is unclear which entry indicates the official Third Amended Complaint.

No. 51).

## STANDARD OF LAW

Defendant seeks to dismiss Plaintiff's action for a lack of personal jurisdiction and for failure to meet the applicable statute of limitations.

**I.      Personal Jurisdiction**

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir. 1986)). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (emphasis added) (citing *Combs*, 886 F.2d at 676). In reaching its decision, "[t]he court must resolve all factual disputes and make all reasonable inferences in favor of the plaintiff." *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.*, 374 F. Supp. 2d 465, 471 (D. Md. 2005) (citing *Carefirst of Maryland, Inc.,* 334 F.3d at 396).

In order for a court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Maryland, Inc.,* 334 F.3d at 396.

Even though the Maryland Court of Appeals requires an analysis under the state's long-arm statute to establish personal jurisdiction, *Mackey v. Compass Mktg., Inc.,* 892 A.2d 479, 493 n.6 (Md. 2006), "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.* at 396-97.  Exercising jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

## II.     Statute of Limitations

Defendant also moves to dismiss Plaintiff's action on the grounds that she did not file the instant action against it within the applicable statute of limitations.[2]  In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court must also disregard the contrary allegations of the opposing party.  *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).

## DISCUSSION

## I.     Personal Jurisdiction

Defendant RCHC of Mexico first moves to dismiss the instant case on the grounds that this Court does not have personal jurisdiction over it.

---

[2]     See *infra* page 9 for a discussion of the appropriate statute of limitations.

### A. Maryland's Long-Arm Statute

The first step under the two-part test set out by the Fourth Circuit in *Carefirst of Maryland, Inc.*, discussed *supra*, is to determine whether Maryland's long-arm statute authorizes jurisdiction over the Defendant. Maryland's long-arm statute provides:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
>    (1) Transacts any business or performs any character of work or service in the State;
>    (2) Contracts to supply goods, food, services, or manufactured products in the State;
>    (3) Causes tortious injury in the State by an act or omission in the State;
>    (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . .

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). The first three provisions of the long-arm statute describe specific jurisdiction, which arises when the defendant's contact with the forum state gives rise to the plaintiff's cause of action. In this case, Plaintiff alleges that she slipped and fell due to Defendant's tortious activity in Mexico. Specific jurisdiction is not appropriate, therefore, because the actions giving rise to this suit did not arise out of Defendant's contacts with Maryland. Thus, the only provision of the long-arm statute that could provide this Court personal jurisdiction over Defendant is § 6-103(b)(4), which authorizes general jurisdiction.

Because general jurisdiction under Maryland's long-arm statute extends to the limits allowed by the Constitution, "the statutory inquiry and the constitutional inquiry merge into one." *Elec. Broking Servs., Ltd. v. E-Business Solutions & Servs.*, 285 F. Supp. 2d 686, 689 (D. Md. 2003) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996)). Thus,

this Court must examine whether the Constitution permits personal jurisdiction over the Defendant.

### B.     Constitutional Analysis

Due process requires that a defendant have certain minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.  Thus, Plaintiff must show (1) that the RCHC of Mexico maintained sufficient contacts with Maryland and (2) that it would be constitutionally reasonable for this Court to exercise jurisdiction over the Defendant.

#### 1.     Minimum Contacts

"General jurisdiction . . . exists only where the foreign defendant's in-state activities amount to 'continuous and systematic' contact with the state." *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 471-72 (D. Md. 2002) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)).  As a result, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623-34 (4th Cir. 1997) (citing 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067, at 295-98 (1987)).

Where, as here, the defendant is a corporation, "it is clear that unlike an individual [person, a corporation's] 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it." *Int'l Shoe Co.*, 326 U.S. at 316.  In this case, Defendant's main business activity is operating the Ritz-Carlton hotel in Cancun, Mexico.  However, the corporate headquarters of RCHC,

Defendant's parent corporation, is in Bethesda, Maryland. Clearly, Defendant has contacts with this state as a subsidiary of a corporation whose principal place of business is here.

Defendant also maintains contacts with Maryland because several of its executives, including the company's president, three vice presidents, treasurer, secretary, and two assistant secretaries, have their offices at the RCHC headquarters in Bethesda. (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. I ¶ 14.) Plaintiff contends that these executives conduct business on Defendant's behalf in Maryland. (*See* Pl.'s Mem. Opp'n Mot. Dismiss 15, Ex. A p. 2.) For example, one of Defendant's executives, Jeff Stant, testified in his deposition about the operating agreement between Defendant and Grupo Inmobiliario Mosa, S.A. De C.V., the actual owner of the property on which the subject hotel sits. (Stant Dep. 49:20-52:9, Jan. 20, 2004). Mr. Stant identified the signature for Defendant on the agreement as belonging to a former vice president who worked out of Bethesda, indicating that the executives conducted business from their Maryland offices. (Stant Dep. 51:15-52:9.) Also, Mr. Stant had brought the document with him from Bethesda, stating that he had seen it in "another office" besides his own. (Stant Dep. 50:10-21.) This indicates that at least some of Defendant's business documents are housed in Maryland. In light of Defendant's corporate ties in Maryland, the company has obviously maintained "continuous and systematic" contact with the state.

Drawing all reasonable inferences in favor of Plaintiff,[3] this Court finds that Plaintiff has

---

[3] Because discovery commenced between Plaintiff and RCHC prior to Judge Gleeson's ruling on RCHC's summary judgment motion, the record before this Court contains some discovered information. However, because the case was before the Eastern District of New York at the time of discovery, the parties did not know to address the precise issue of Defendant's business activities in Maryland for the purpose of establishing personal jurisdiction in this state. As such, Plaintiff need only make a prima facie showing of personal jurisdiction at this time.

presented a prima facie showing of personal jurisdiction. Whether she can establish personal jurisdiction by a preponderance of the evidence will be determined at trial.

    **C.**    **Traditional Notions of Fair Play and Substantial Justice**

In order to determine whether jurisdiction is constitutionally reasonable over a defendant, a court must consider several factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the entire judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of all states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

In this case, the burden on the Defendant to litigate in Maryland would not be too great. The corporation's executives maintain offices in Maryland and could testify on the Defendant's behalf. Although it would be marginally inconvenient for the Defendant's managers and employees living in Mexico to travel to Maryland to testify, it would not pose a significant burden on the corporation to arrange for transportation. Also, the Plaintiff has a strong interest in obtaining relief, as she has suffered significant injuries as a result of the fall. Even though Plaintiff is a resident of New York, there is no other state with a stronger interest than Maryland, where the Defendant's executives and parent corporation chose to maintain offices, especially because the incident occurred outside the United States. Accordingly, after balancing the various interests, this Court concludes that personal jurisdiction over the Defendant would be constitutionally reasonable.

In conclusion, Defendant's Motion to Dismiss for lack of personal jurisdiction is

DENIED.

## II.   Statute of Limitations

Defendant next argues that Plaintiff's action must be dismissed because she failed to comply with the statute of limitations. In order to determine the appropriate statute of limitations, this Court must first determine which state's law applies to this case.[4] Under the *Erie* doctrine, a federal district court normally applies the substantive law of the state in which it is located. However, this case was transferred to this Court pursuant to 28 U.S.C. § 1404(a). When a case is transferred from one federal court to another under 28 U.S.C. § 1404(a), the transferee court applies the substantive law that the transferor court would have used. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 600 (4th Cir. 2004) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 637-39 (1964)). Accordingly, because Plaintiff originally filed her complaint in the U.S. District Court for the Eastern District of New York, this Court must apply New York substantive law.

Personal injury claims have a three-year statute of limitations in New York.[5] N.Y. C.P.L.R. 214 (Consol. 2006). Plaintiff fell at Defendant's hotel on August 12, 2000. Thus, in order to satisfy the statute of limitations, she would have had to file her cause of action by August 12, 2003. Plaintiff filed her first complaint on July 24, 2001, which would have met the statute of limitations. However, Plaintiff's original complaint only named RCHC as a defendant.

---

[4] Statutes of limitations are considered substantive, not procedural, and therefore governed by state law in diversity cases. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 110 (1945).

[5] Even if this Court had to apply Maryland law, the result would have been the same, because Maryland also has a three-year statute of limitations for personal injury claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2006).

9

Thus, Defendant argues that because Plaintiff did not name it as a defendant until she filed her third amended complaint, her claim is barred by the statute of limitations.[6] (Def.'s Mem. Supp. Mot. Dismiss Ex. 2.)

Plaintiff argues in response that the third amended complaint naming Defendant relates back to the original complaint. (Pl.'s Mem. Opp'n Mot. Dismiss 9-14.) Under Federal Rule of Civil Procedure 15(c),

> [a]n amendment of a pleading relates back to the date of the original pleading when
> ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint [120 days], the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).[7] Rule 15(c)(3) governs the analysis, because the amended complaints

---

[6] Plaintiff actually named Defendant in her second amended complaint filed on September 30, 2002—almost a year before August 12, 2003. However, "[u]nder New York law, an action is deemed commenced when the summons is served." *King v. Best Western Country Inn*, 138 F.R.D. 39, 44 (S.D.N.Y. 1991). *See* N.Y. C.P.L.R. 304 (Consol. 2006). Service of process "was not successfully effectuated" on any of the Mexican corporations named in Plaintiff's second amended complaint despite her efforts. (Pl.'s Mem. Opp'n Mot. Dismiss 4.) Thus, Plaintiff did not meet the statute of limitations when she filed the second amended complaint.

[7] Rule 15(c)(1) provides that "relation back is permitted by the law that provides the statute of limitations applicable to the action." However, Rule 15(c)(1) was added to allow a state's relation back laws to apply only "if that law affords a more forgiving principle of relation back than the one provided in this rule." Fed. R. Civ. P. 15(c) Advisory Committee Notes (discussing the 1991 Amendments to Rule 15). Because New York's law is no broader than

10

added Defendant as a party "against whom a claim is asserted." Both the original and amended complaints allege the same claims arising out of Plaintiff's fall at the Ritz-Carlton hotel in Mexico. Thus, in order for Plaintiff's claim to relate back, within 120 days of the filing of the original complaint, Defendant had to (1) receive notice of the action, and (2) know or should have known that it would have been named in the original complaint but for Plaintiff's mistake.

First, Defendant claims that it did not receive notice of the action until it was served with Plaintiff's third amended complaint in December 2004, more than 120 days after her original complaint was filed in July 2001. (Def.'s Mem. Supp. Mot. Dismiss Ex. 2 p. 15.) Plaintiff argues that Defendant was put on notice as soon as the original complaint was filed against RCHC, because Defendant is a subsidiary of RCHC, seven of Defendant's eight executives are also executives for RCHC, RCHC exercises "a considerable amount of control" over Defendant, and RCHC was served "at the same location that RCHC of Mexico was eventually served." (Pl.'s Mem. Opp'n Mot. Dismiss 10-13.) Defendant does not refute these arguments, but rather maintains simply that "notice" is given when process is served. (Def.'s Mem. Supp. Mot. Dismiss Ex. 2 p. 15.) However, "[i]t is not essential that a potential party receive formal notice of the claim within 120 days for purposes of Rule 15(c)(3)(A)." *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 138 (E.D.N.Y. 1998). In light of the relationship between the parent and subsidiary corporations, Defendant received sufficient notice of the pending action that it would "not be prejudiced in maintaining a defense on the merits."

Second, Defendant argues that Plaintiff was "less than diligent in identifying the proper defendants" because RCHC denied ownership of the Cancun hotel in its Verified Answer to the

---

Rule 15(c)(3), which incorporates 15(c)(2), this Court must apply Rule 15(c)(3).

original complaint. (Def.'s Mem. Supp. Mot. Dismiss Ex. 2 p. 15.) However, this only supports Plaintiff's claim that she was mistaken as to the identity of the owner of the Ritz-Carlton hotel where she slipped. Plaintiff did not deliberately omit RCHC of Mexico as a defendant, and she attempted to correct her mistake by filing an amended complaint naming Defendant. In contrast, RCHC knew from the beginning that it was not the proper defendant. Thus, Defendant either knew or should have known that the claim was against it rather than its parent corporation.

In sum, this Court finds that Plaintiff's third amended complaint relates back to her original complaint under Rule 15(c)(3), and the suit is not barred by New York's three-year statute of limitations on tort claims. Accordingly, Defendant's Motion to Dismiss for failure to comply with the statute of limitations is DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED. A separate Order follows.

November 9, 2006

/s/

Richard D. Bennett
United States District Judge